[Crim. No. 1320. Fourth Dist. June 20, 1957.]

THE PEOPLE, Respondent, v. HENDERSON TAYLOR, Appellant.

Augustine, Bryans & Ragen for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was convicted by a jury of the crime of driving a vehicle while under the influence of intoxicating liquor on August 25, 1956, resulting in injury to a person, in violation of Vehicle Code, section 501. He was granted probation after serving 90 days in jail and paying a fine of $250. No complaint is made as to the sufficiency of the evidence to support the verdict.

The argument on appeal is that the trial court erred in overruling defendant's objection to certain hypothetical questions asked by the prosecution of the criminalist for the San Diego Police Department relating to his opinion as to whether defendant was under the influence of intoxicating liquor at the time of the injury, when the expert witness was not present at the time.

The witness stated he was a *criminalist* for the city in the police department crime laboratory, and had made tests to study the effects of known percentages of blood and alcohol on the coordination and judgment of human subjects. Counsel for defendant interrupted the witness and stipulated that "he is an expert in his line" and stipulated his qualifications as a *criminalist*. Without further questioning the stipulation was accepted. He proceeded to testify that he made an examination of the *intoximeter* used on defendant to determine the percentage of blood alcohol shown by it and found the subject's blood alcohol was ".083 per cent"; that according to the standards set up by the American Medical Association, National Safety Council and American Bar Association, an average person with from .0 to .05 would not be affected by alcohol and would not be termed under its influence; that a person with from ".05 to .10 per cent" blood alcohol is possibly under its influence, that is, a minority of such group will be, and a majority will not be; that with from ".10 to .15 per cent" they very probably would be, and all persons with .15 and above, regardless of their tolerance, would be; that within the zone of .083, an intoximeter test, without other evidence, would not show whether the person was or was not under the influence of it; that other facts must be known; that some people are more easily influenced by the alcohol they consume than others; that the average person will "void about .02 per cent" per hour of pure alcohol, and accordingly a reading of .083, taken one hour after the accident, would indicate a reading of .103 at the time; that to insure a test under ".27 per cent," other objective symptoms of sobriety or lack of it should be considered.

The hypothetical question was then propounded of the witness: "Mr. Burgess, assuming a person who, driving a vehicle on a public highway, drives his car through a stop sign at about twenty-five miles an hour, continues on into the approximate center of the intersection where he collides with another car; that the driver of the car in question that has run the stop sign does not put on the brakes or slow his car noticeably up until the time of the collision; that that person is then given a Romberg test of coordination in which he falls off balance and is caught by an officer when he tries to stand on one foot, he falls off balance and is caught by an officer when he stands with his head back and his eyes shut, he has difficulty in getting his heels and toes together; he, when walking down the sidewalk, walks in an unsteady fashion; and assume further that this man made a statement that he gets drunk easily and that he had a blood alcohol of .083, . . . based on a test one hour after the collision, would you think that man was under the influence of intoxicating liquor . . . ?" Defendant testified that while in Tijuana that afternoon he had two glasses of beer; that he became sick on a chicken taco which he purchased; that after they crossed the border they went into Sam's Café and he there had a bottle of beer, left there a little after 7 p. m. and soon thereafter the accident occurred. He denied being under the influence of alcohol and claimed he had complete control of his car. A passenger in defendant's car testified that defendant was unable to stand correctly or walk steadily as a normal person would during the administration of the sobriety tests by the officer. He observed that defendant "didn't do good" while taking these tests and he believed that the liquor consumed by the defendant affected him more than it would the average person so that defendant got drunk easily, and that it didn't take too much to get him drunk. Other witnesses testified concerning the facts related in the propounded question. Upon this given set of facts and over objections the expert was allowed to answer the question. He said that in his opinion, under such circumstances a normal person would be under the influence of liquor.

 Defendant argues that although he stipulated the witness was an expert in his field, the witness went beyond that and gave an opinion on matters of common knowledge; that an expert is only allowed to give an opinion concerning facts not of common knowledge, and that as to intoxication it must be based on personal observation. It is argued further

that the expert was giving an opinion as to the ultimate question in issue to be determined by the jury, citing 19 California Jurisprudence 2d page 14, section 289; page 17, section 290; page 20, section 293; and page 77, section 347; also 10 California Jurisprudence, page 1003, section 262; and *Stuart* v. *Dotts*, 89 Cal.App.2d 683, 686 [201 P.2d 820].

It is further argued in this connection that the error was emphasized because the prosecutor, in his argument to the jury, laid great stress on the opinion of this expert and stated that defendant was intoxicated because it was *scientifically* proved to be true.

In *People* v. *Ravey*, 122 Cal.App.2d 699 [265 P.2d 154], under similar circumstances, a qualified expert was permitted to express his opinion as to the intoxication of a person, based on his finding of .29 of one per cent by weight of alcohol in the blood. In *Manney* v. *Housing Authority*, 79 Cal.App. 2d 453 [180 P.2d 69], although factually dissimilar, it was held with certain exceptions, that a nonexpert may not testify as to his opinion, based on facts he did not personally observe, but said:

". . . but the expert in any case proper for the reception of expert testimony may give his opinion, although he did not personally observe the facts, basing his opinion upon the facts testified to by other witnesses put to him in the form of hypothetical questions . . . The ultimate question to be determined in every case in which expert testimony is tendered is whether the case is one outside of the common experience of men so that a person of training and experience by reason of his superior knowledge is better able to reach a conclusion from the facts. If the case is one for expert testimony this is so not because the expert has witnessed the facts, but because he is qualified by reason of his special knowledge to form an opinion on the facts while the ordinary juror is not. It is a confusion of the two exceptions to the rule excluding opinion evidence to make the reception of expert testimony dependent upon the fact that the expert has been a personal witness to the facts."

See also *Stuart* v. *Dotts, supra,* page 687, where an officer, not shown to be a qualified expert, testified as to his opinion whether a person was in a crosswalk at the time of the accident, his opinion being based partially on his own observation of certain facts and facts related by other parties. It was there said:

"The officer did not qualify as an expert witness, nor was a

hypothetical question propounded based upon facts presented by other witnesses. As a nonexpert, he could only testify to matters which he had observed and were deemed too complex to present to the jury in any manner except as opinion evidence.'' It was held that the admission of the opinion testimony of the officer was error, and when considered with all of the other facts, was prejudicial to the rights of plaintiff.

The rule stated in *Manney* v. *Housing Authority, supra,* at page 461, is as follows:

''Is the matter involved one which is not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may 'enable him to draw an inference, where men of common experience, after all the facts proved, would be left in doubt.' '' (Citing *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 571 [147 P. 238].)

Volume 19, California Jurisprudence 2d, page 77, section 347, relied upon by defendant, does recite that expert testimony is not necessary to prove intoxication, but it is also stated that such testimony is competent. Inferentially, the court held in the cited cases that if the witness is qualified as an expert on the subject and the proposed hypothetical questions were proper, within the rule above set forth, based on facts testified to by the expert witness as well as other witnesses, he could give his opinion as such expert provided the subject matter of the hypothetical question clearly ties the other established facts in evidence to the factor respecting the intoximeter reading, particularly where the purpose of the entire question was to give significance to the otherwise inconclusive reading which the expert made, and where it was stipulated he was qualified in this field. In just what field a criminalist operates is not clearly shown by the record. Webster's New International Dictionary, Second Edition, Unabridged [1954] defines it as ''One versed in criminal law; one addicted to criminality; also a psychiatrist dealing with criminality.'' Criminality is defined as ''an act or practice which constitutes a crime.'' The field or limitations of the expert criminalist to testify on a subject may well cover subjects or factors other than those of an expert versed in the study of blood alcohol percentages as they affect the coordination and judgment of human subjects. In a general sense, it may well appear that the question of a person's intoxication by observation may be in a field that may be con-

sidered as common knowledge. However, the question whether the actions of a person are prompted by the use of alcohol becomes important. It is a scientific factor and would have an important bearing on the question of his being under the influence of intoxicating liquor and the degree of the intoxication as defined by law. The question of his intoxication was not the only or ultimate question for the jury to decide under the charge made.

 There is no hard or fast rule that an expert may not be asked a question that is coincident with the ultimate issue. (19 Cal.Jur.2d p. 18, § 290.) Qualified medical experts are allowed to testify as to their opinions regarding the sanity or insanity of a person at a particular time, or as to a patient's condition, based upon their own examination and competent testimony of other facts related by other witnesses in the case where the main issue for the jury is the question of his sanity or insanity or the condition of the patient at a particular time. (*People* v. *Wilson*, 25 Cal.App.2d 332 [77 P.2d 238]; 8 Cal.Jur. p. 162, § 243; *People* v. *Plyler*, 126 Cal. 379 [58 P. 904].)

 Of course the weight and effect of opinion evidence of an expert is clearly a matter for the jury to determine, and the jury was so instructed. There was substantial evidence produced, independent of the opinion expressed, that defendant was intoxicated. We conclude that no prejudicial error resulted.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.