[Crim. No. 6871. Second Dist., Div. Three. Mar. 17, 1960.]

THE PEOPLE, Respondent, v. ALBERT ROSALES
RODELLA, Appellant.

Max Solomon, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury convicted defendant of selling marijuana. He appeals from the judgment and the order denying his motion for a new trial. His points are errors in the admission and exclusion of evidence, and misconduct of the district attorney. It is conceded the evidence supports the verdict.

About 2:15 p.m. on August 6, 1958, Joel Lesnick, a Deputy Sheriff, in company with one Dale Whipperman, went to the home of Warren and Larry Lilly in South San Gabriel. Whipperman was an informer. Lesnick drove into the yard and met defendant and the Lilly brothers. Whipperman introduced Lesnick to defendant as "Joe." Lesnick asked defendant "if it would be possible if he had any marijuana." Defendant said "yes." Lesnick said he wanted to get "a can." Defendant said, "It will be $10. Meet me at the Garvey Park in about ten minutes." Lesnick and Whipperman went to Garvey Park. A few minutes later defendant arrived in an automobile. He motioned Lesnick and Whipperman to enter the car, which they did. They drove around the block. As they did so, defendant handed Lesnick a bag containing an ounce of marijuana. Lesnick gave defendant $10 and left in his car with Whipperman.

Lesnick next saw defendant on August 11, 1958, at a wash-rack where defendant was changing tires on his automobile. Lesnick assisted defendant and while they were talking said

he wanted to buy some more "weed." Defendant stated, "Well, go get Dale Whipperman and meet me in Garvey Park in about 15 minutes." Lesnick located Whipperman, and with him drove to Garvey Park. Defendant arrived shortly, left his car, approached Lesnick, and said he had been drinking a little bit and that he was a little bit leery as to who Lesnick actually was and that was why he wanted Mr. Whipperman along. Defendant stated: they had been thinking quite a bit about the last sale of narcotics he had made to Lesnick; he was not sure who Lesnick was; he was afraid that he might be a police officer; and he asked Lesnick whom he knew in the area. Lesnick said he knew the Lilly brothers. Defendant said, "Let's go over to their place and see if they can vouch for you." Defendant, Lesnick, and Whipperman then drove to the Lilly brothers' place. Defendant asked the Lilly brothers how well they knew Lesnick, whether he was "O.K.," saying that selling narcotics was a dangerous business and he wanted to make sure he was "O.K." and that he "wasn't the heat or a police officer." Larry Lilly said he had seen Lesnick around a few times but did not know him too well. Defendant asked Lesnick what area he was from. Lesnick gave him a Hollywood address. Defendant stated he would contact him and check to see if he was "O.K." Defendant did not sell Lesnick any narcotics that day.

Defendant denied having sold marijuana to Lesnick at any time.

Defendant was arrested on November 18, 1958. At the close of Officer Lesnick's testimony on direct examination he was asked "Q. Now, could you tell me, Officer, why didn't you arrest Mr. Rodella on August 6th, 1958?" Defendant objected on the grounds the matter was incompetent, irrelevant, and immaterial. The objection was overruled. The officer answered, "He wasn't placed under arrest August the 6th, 1958, due to the fact I was attempting to make further narcotic purchases from him and possibly obtain his source of narcotics." Defendant asserts error in the ruling. Immediately following the quoted answer, this occurred: "Q. BY MR. PACHTMAN [district attorney]: Were you working a particular area at that time? A. Yes, sir, I was. Q. And did you feel that your identity as a police officer would be revealed, also, if you made an arrest? A. It would."

It is argued the testimony was self-serving and prejudicial in that it infers defendant was a dealer in narcotics with a source of supply for all types of narcotics, and that Officer

Lesnick had independent information not presented to the jury. We think the point is without substance. The jury knew from the previous testimony of the officer that defendant was under surveillance, that he was a dealer in narcotics, and that he must have had a source of supply. Further, counsel for defendant argued to the jury, in effect, that the fact the arrest was not made until November 18, 1958, was evidence the offense had not been committed. No prejudice appears.

On cross-examination Officer Lesnick testified he last saw Whipperman about August 12 or 13, 1958, and that he had not attempted to contact him. He was then asked, "Q. Do you remember me [counsel for defendant] asking you to contact Mr. Whipperman?" .The People objected. The following then occurred: "MR. SOLOMON: Very well, your Honor. I think the way the record stands now, that question was objected to. THE COURT: I passed it. There is no ruling on it unless you want a ruling. MR. SOLOMON: No, I am satisfied with your Honor's finding, so at this time that objection is sustained and that takes care of that phase. THE COURT: I didn't give you a ruling. I passed it, pending this argument. MR. SOLOMON: Yes, your Honor, but I am agreeing with your Honor's observations, may I say, and I don't think a proper foundation is laid for the question as to when it was made, when——THE COURT: I, out of proper caution, thought this was what was coming, so I postponed it purposely to have our discussion in the absence of the jury. I don't want to ruin this record, either mine or yours, but if that will suffice, leave it as it is. You let the record stand that way without a ruling. MR. SOLOMON: That is agreeable." Defendant claims error. In view of the concession, there was no error.

Officer Lesnick was called in rebuttal. On direct examination he was asked whether in the conversation with defendant on August 11, 1958, he had given defendant "an address on North Sweitzer?" He answered, "Yes." He was then asked, "Q. Why did you give him that address?" Defendant objected. The court stated, "I will let him answer relative to any conversation." The witness did not answer. The following then occurred: "MR. PACHTMAN [district attorney]: It is just to go into why this address happened to have been given. Let me lay a foundation then; may I, your Honor? THE COURT: Yes. Q. BY MR. PACHTMAN: You didn't live at this Sweitzer address, did you? A. No, sir. Q. Did you know anybody that did live at that address? A. I believe I knew someone that used to live there, and I knew the number

I gave was a court. Q. And you gave that address to the defendant, is that right? A. Yes, sir. Q. Did he ask you for an address? A. Yes, sir. Q. And did he tell you why he wanted an address? A. Yes, sir. Q. What did he tell you? A. He stated he wanted to come up and see where I lived to make sure I was okay for further narcotic purchases. That is why I gave him the address.'' It is asserted the court erred in not ruling on the objection, and permitting the repetitious alleged conversation to be repeated to the jury. Since there was no objection to the last question or a motion to strike, defendant has no ground for complaint.

Defendant contends remarks of the district attorney made in his closing argument to the jury constituted misconduct. No objection was made or exception taken to the remarks, nor were they assigned as error with a request that the court instruct the jury to disregard them. ■■■ Generally, alleged misconduct of counsel in his argument to the jury will not be considered on review where no objection, exception, or assignment of error was made and the trial court was not asked to admonish the jury to disregard them. (*People* v. *Wein,* 50 Cal. 2d 383, 396 [326 P.2d 457]; *People* v. *Lyons,* 50 Cal.2d 245, 261-264 [324 P.2d 556].) Notwithstanding the rule, we have examined the remarks of which defendant complains and are satisfied they fell within the scope of proper argument.

There is no other assignment of error.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.