[Crim. No. 6872.  Second Dist., Div. One.  June 10, 1960.]

THE PEOPLE, Respondent, v. MANZOLA JEFFERY, Appellant.

674

Max Solomon for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction for occupying a place where bookmaking is carried on.

In an information filed in Los Angeles County the defendant was charged in three counts with violating Penal Code, section 337a, subdivisions 1, 2 and 4 and also that he had suffered a prior conviction of violating the same code section in 1957. Defendant pleaded not guilty and denied the prior conviction. A jury trial was duly waived and it was stipulated that the case might be submitted on the testimony taken at the preliminary hearing with the right to submit other evidence. The defendant admitted the prior conviction to the trial judge. The court found defendant guilty of count 2 which charged in effect that the defendant had occupied a place where bets were made and further found him not guilty as to counts 1 and 3. A motion for a new trial was made and denied. Defendant has appealed from the order denying his motion for a new trial and from the judgment.

A résumé of the facts is as follows:

On February 5, 1959, Officer Yorkovich who had prior

information, went to 6405 S. Vermont Avenue where on the front window thereof appeared the words ''Watkins Maintenance.'' Officer Hand was with Yorkovich and they entered the front door of the place at about 12:45 p. m. and found a small office divided by a partition. The defendant was seated at a desk in the front portion of the room with a lead pencil in his hand. In front of defendant on the desk lying open was a copy of the National Daily Reporter for that date. Another copy of the National Daily Reporter paper was found close by. On top of the National Daily Reporter in front of the defendant was a small piece of white paper which contained certain pencil notations at the upper left hand corner namely the figures 1, 3 and 8.

It was stipulated that Officer Yorkovich was an expert in the ways and means, books, papers and paraphernalia commonly used in Los Angeles County in bookmaking. The officer stated that bets are commonly recorded by symbols and figures which can be coded from the National Daily Reporter. It was the opinion of the officer as an expert that the numeral ''1'' upon the white sheet of paper indicated the first race, the numeral ''3'' would, by reference to the National Daily Reporter, refer to a horse by the name of Space Race and that the figure ''8'' indicated an $8.00 win-wager on the race horse named.

On the right hand corner of the paper were a series of numerals which ''would indicate, possibly, results.'' There was a telephone bill found by the officer made in the name of James Jeffery at 6405 S. Vermont Avenue.

A key taken from the possession of the defendant actuated the lock on the front door. The officers talked with the defendant and he was asked as to how long he had been bookmaking and he replied that he ''wasn't making book, he only bet the horses.'' He said the figures on the small white piece of paper were race results and that the other figures were ''just something that he wrote down.'' The defendant further stated that he had been arrested for bookmaking in the past. In fact the record shows that he was at the time of the arrest in the present case on probation for a previous bookmaking violation. The defendant said that he had not been employed for five years.

While the officers were present the telephone rang six or seven times. However, when it was answered by either of the officers the party calling would hang up. Officer Yorkovich stated that it was his opinion that the place was ''an operation

commonly called a cash room.'' He stated that when a bettor called to a cash room ''a temporary recording of the bet is made and periodically the office at the other end will call the cash room and at that time take all wagers that the person has at the cash room, and at that time they can destroy the small pieces of paper.'' He also stated that codes or symbols are used so that the person answering the phone will know that he is talking to the cash room operator and that if one does not know the code reception the person at the other end will hang up and that it is his opinion that such is what happened in this case. The defendant had about $315 on his person at the time of the arrest and he stated that he had won such amount in a gambling game the night before. Appellant contends that there is no substantial evidence in the record to support the conviction.

The officer was an expert in the matters in question then pending before the court and he gave his opinion. A police officer who is qualified in such matters can testify as to the significance of markings on a scratch sheet and the customary methods and equipment of the places engaged in bookmaking and he can identify exhibits as paraphernalia used for or registering bets. (*People* v. *Race,* 151 Cal.App.2d 678, 684 [312 P.2d 322].)

The weight to be given expert testimony is for the trier of fact to determine. (*People* v. *Tucker,* 88 Cal.App.2d 333, 340 [198 P.2d 941] ; *People* v. *Taylor,* 152 Cal.App.2d 29, 34 [312 P.2d 731].) This court will not reverse the trier of fact's determination unless it can be shown that under no hypothesis whatever is the evidence insufficient. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

From the facts in this case we think that it was entirely proper, after hearing Officer Yorkovich testify, to conclude that the defendant occupied the place he did for the forbidden purposes set forth in the statute. (See *People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693].)

The defendant did not testify in this case nor did he offer any defense. He said he had not worked for five years, that the $315 found in his possession had been won the night before in gambling and that the pencil markings were race results and ''something he wrote down.'' He was then on probation for a bookmaking offense and it would seem that if he were innocent of any charge he would offer at least his testimony to rebut the incriminatory evidence.

 As said in *People* v. *Smith*, 113 Cal.App.2d 416, 419 [248 P.2d 444] :

". . . [T]he defendant failed to avail himself of an opportunity to explain or deny a number of incriminating circumstances about which he could reasonably be expected to know. The court was entitled to consider his failure to do this 'as tending to indicate the truth of such evidence and as indicating that among the inferences that may be drawn therefrom, those unfavorable to the defendant are the more probable.' . . ."

In *People* v. *Ines*, 90 Cal.App.2d 495, 499 [203 P.2d 540] it is stated :

"Such failure by him to explain or deny under oath the evidence woven about him was itself a potent fact for consideration by the trial judge and affords additional support for the judgment."

The judgment and the order denying the motion for a new trial are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.