[Crim. No. 7426.   Second Dist., Div. Three.   Mar. 27, 1961.]

THE PEOPLE, Respondent, v. ROSCOE BENNETT McNEAR, Appellant.

Ellery E. Cuff, Public Defender, James P. Nunnelley and James L. McCormick, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

VALLÉE, J.—Defendant was accused in one information of two counts of grand theft (Pen. Code, § 487), and in one count with unlawfully taking and driving an automobile, the property of Downey Ford Company (Veh. Code, § 503; now § 10851). In another information he was accused of two counts of issuing drafts without sufficient funds (Pen. Code, § 476a) and one count of grand theft. The informations were consolidated and the counts in the second information were made counts IV, V, and VI of the first information. A jury found defendant not guilty of one count in the first information, grand theft of an automobile from Downey Ford Company, and guilty of all other counts. A new trial was denied. Defendant was sentenced to state prison. He appeals from the judgment and the order denying a new trial.

The assignments of error are: (1) The evidence is insufficient to sustain the findings of guilt as to counts III, IV, and V. (2) Defendant was denied a fair trial and deprived of his constitutional rights in that the court instructed the jury erroneously, the district attorney was guilty of prejudi-

cial misconduct, and the court committed prejudicial error in a statement it made during argument by counsel for defendant.

*Count III—Grand Theft from John M. and Phyllis Parker*

Downey Ford Company, an automobile dealer, is located in Downey. In the latter part of April 1959 its sales manager made a check of the automobiles on hand. A 1955 Mercury sports coupé, license MBW 522, was missing. Downey Ford had $700 invested in the car and was attempting to sell it. The car had not been sold. Defendant had not been given permission to take it.

On April 17, 1959, John Parker purchased this Mercury from defendant. Defendant asked and Parker agreed to pay $950 for it. Defendant told Parker he was selling the car for Downey Ford which wanted $600 for it, and $350 would be his commission. At the time defendant prepared a purchase order on a form of Kaiser-Frazer Sales Corporation and dated it April 17, 1959. The purchase order shows the sale of a 1955 Mercury, license MBW 522, the price $600, sales tax $24, license transfer $2.00, total $626, paid $200, balance to be paid in 42 weekly installments of $10 each. Parker paid defendant $350, purportedly as his commission.

There was testimony by defendant to the effect he had purchased the car from Downey Ford and had agreed to pay $600 for it. He did not have a salesman's license. Eventually Parker paid Downey Ford the money due it.

Defendant attacks his conviction of theft of the money from the Parkers on the ground there was no proof he made any false representations to them. We think the evidence shows the obtaining of money by false pretenses.

The elements of the offense of grand theft on a theory of obtaining money by false pretenses are (1) an intent to defraud; (2) an actual fraud committed; (3) the use of false pretenses to perpetrate the fraud; and (4) reliance upon the fraudulent representations in parting with the money. (*People* v. *Massey,* 151 Cal.App.2d 623, 658-659 [312 P.2d 365].) Deception deliberately practiced for the purpose of obtaining an unfair advantage of another is fraud.

As we have seen, defendant took the car from Downey Ford. He represented to the Parkers he had authority from Downey Ford to sell it. He had no such authority. In fact, he sold the car to them as a purported representative of Downey Ford. The Parkers relied on his representations and parted with their money in reliance on them. He obtained at least $350 from the Parkers. There can be no doubt but

that defendant intended to defraud them. All the elements of obtaining money by false pretenses were proved. The evidence was sufficient to sustain the finding of guilt as to count III.

*Counts IV and V—Issuing Drafts Without Sufficient Funds*

McPeak Motor Company was a new and used car dealer. On July 20, 1959, defendant contacted John Quinn, an employee of McPeak. Defendant asked him if he had any automobiles he wanted to wholesale. Quinn told him to look around the lot and see if he could find a car he wanted. Defendant did so, returned, and told Quinn he was interested in a 1954 Chevrolet station wagon. Quinn told him that car was difficult to obtain, and before he would make a deal it would be necessary for him to take another car in a "package deal." Defendant decided to take the Chevrolet and a 1952 Cadillac.

Quinn prepared a purchase order for the cars. Defendant told Quinn the company he represented was A & M Motor, that its address was 9512 Whittier Boulevard, and that its telephone number was UN 0-1984. Quinn inserted this information in the purchase order. Defendant signed the purchase order "A & M Motor By Jack McNear" and inserted "AD 343701" as the number the Board of Equalization had supposedly issued to A & M Motor for resale of cars. Quinn prepared two purchase drafts: one was for $475 on Bank of America, Whittier Branch, payable within 10 days after presentation to McPeak Motors for the 1954 Chevrolet station wagon; the other was for $400 on the same bank payable within the same time to McPeak Motors for a 1952 Cadillac Coupé de Ville. Defendant inserted the name of the bank in the drafts and signed both of them "Jack McNear  A & M Motor." A man who was with defendant drove the Chevrolet away.

McPeak Motor Company endorsed the drafts and sent them to Bank of America for collection on July 21, 1959. Bank of America returned them to McPeak for the reason neither A & M Motor nor defendant was known to it. There was no A & M Motor or A & M Motors. The Chevrolet was never recovered by McPeak. Defendant told the police he had driven the Chevrolet from McPeak's. He was asked if A & M Motor was located at 9512 Whittier Boulevard. He said he could not be certain but it was somewhere in that neighborhood. He consented to take the officers to its location. He took

them to 8745 Whittier Boulevard and pointed to a lot which he said had been the location of A & M Motor. The "house on the lot was vacant and the windows and doors were boarded up and the lot was vacant of any cars or merchandise, anything of that nature with the exception of a real estate sign." He said he had delivered the Chevrolet to that location. The lot had never been leased as a car lot. The address, 9512 Whittier Boulevard, which defendant gave Quinn was nonexistent.

With respect to counts IV and V defendant asserts the evidence is insufficient because the drafts he issued are not drafts within the purview of Penal Code, section 476a. So far as pertinent, section 476a reads: "Any person who . . . wilfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary . . . for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto," is punishable in the county jail or in state prison.

In common parlance a draft is an open letter of request from, and an order by, one person on another to pay a sum of money therein stated to a third person on demand or at a future time therein specified, and the word is a common one for a bill of exchange. (*Wilson* v. *Buchenau,* 43 F.Supp. 272, 275; *Cole* v. *Dalton* (N.Y.) 6 Daly 484, 485; *Prehm* v. *State,* 22 Neb. 673 [36 N.W. 295, 297].) The word is *nomen generalissimum* and includes all orders for the payment of money drawn by one person on another. (*Wildes* v. *Savage,* 29 F. Cas. 1226, 1229.) It will be observed that section 476a says "draft or order upon any bank." Whether the instruments drawn on Bank of America are technically drafts or not is of no consequence. Without question they are orders on a bank for the payment of money. The point is untenable. The evidence supports the findings of guilt as to counts IV and V.

The court instructed the jury that if under the evidence they were convinced beyond a reasonable doubt that defendant was guilty of grand theft of the car from Downey Ford as charged in count I and of unlawfully driving the

same car as charged in count II, they could find him guilty of both offenses. Defendant assigns error. Since defendant was acquitted of the offense charged in count I and only found guilty of the offense charged in count II, it is patent there was no violation of the rule against double judgments for a single act. (See *People* v. *Kehoe,* 33 Cal.2d 711, 715 [204 P.2d 321].) The error, if any, was not prejudicial.

▮ At the request of the People the court gave the standard instruction on confessions and admissions. (CALJIC 29 (rev.).) Defendant assigns error. He says there was no confession and that giving an instruction on that subject was prejudicial. There were admissions, but probably no confession. Defendant has not shown any prejudice. The abstractly correct instruction was harmless. (*People* v. *Southack,* 39 Cal.2d 578, 584-585 [248 P.2d 12].) A reversal is not warranted on this ground. (*People* v. *Tannehill,* 187 Cal.App.2d 402, 406-407 [9 Cal.Rptr. 675].)

▮ Defendant claims the court erred in not giving an instruction limiting evidence of inconsistent statements to impeaching purposes only. Since defendant did not offer such an instruction, he cannot claim error. (*People* v. *White,* 50 Cal.2d 428, 430 [325 P.2d 985].)

It is asserted so many instructions were given on the various classes of theft that it is questionable whether the jury could have complied with an instruction that they must unanimously agree on the type of theft committed. We find no basis in the record for this assertion. It is of course presumed the jury meticulously followed the instructions given.

Defendant asserts the district attorney made numerous and harassing objections during his counsel's attempt to argue the case to the jury. The record does not support his assertion. The contention is also made that the district attorney was guilty of misconduct in his argument to the jury. There was no objection or exception to any part of the argument of the district attorney, nor was it charged that he was guilty of misconduct, nor was the court requested to instruct the jury to disregard any part of his argument. ▮ Generally, alleged misconduct of counsel in his argument to the jury will not be considered on review where no objection, exception, or assignment of error was made and the trial court was not asked to admonish the jury to disregard them. (*People* v. *Rodella,* 178 Cal.App.2d 915, 919 [3 Cal.Rptr. 392].)

▮ We are of the opinion that even if the remarks of the district attorney were improper they were not so flagrant

that they could not have been cured by a prompt admonition to the jury with the exception of a confused and incorrect statement of the law in one respect. There is no indication that the statement was not made in good faith, and the court correctly instructed the jury on the law in the respect in which the district attorney had misstated it. Under the circumstances the statement in and of itself could not have been prejudicial.

At one point in the argument of counsel for defendant, the district attorney objected, and the court stated, "[Y]ou know that is improper argument." Defendant says the court was guilty of prejudicial misconduct. There was no objection or exception to the court's statement, nor a request that the jury be instructed to disregard it. We do not think the rights of defendant were prejudiced in any way. (*People* v. *MacDonald*, 167 Cal. 545, 550-551 [140 P.2d 256]; *People* v. *Toth*, 182 Cal.App.2d 819, 830-831 [6 Cal.Rptr. 372].)

There are no other assignments of error.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.