[Crim. Nos. 8137, 8258. Second Dist., Div. Three. Feb. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. BRUCE GERALD EISENBERG, Defendant and Appellant.

(Consolidated Cases.)

Bruce Gerald Eisenberg, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Louis L. Selby, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In each of five counts of an information, the defendant was charged with the crime of issuing a check without sufficient funds in violation of section 476a of the Penal Code. These offenses were alleged to have occurred, respectively, on or about March 3, 4, 6, 9, and 11, 1961. He was found to be guilty of each offense in a trial by jury. His motion for a new trial was denied and it was adjudged that he be punished by imprisonment in the state prison. He has appealed from the order denying his motion for a new trial and from the judgment (2d Criminal No. 8137).

In 1958 the defendant pleaded guilty to two charges of the crime of issuing a check without sufficient funds in violation of section 476a of the Penal Code as alleged in a complaint filed in the municipal court, and on June 2, 1958, after the case had been certified to the superior court (see Pen. Code, § 859a), proceedings were suspended without the imposition of sentence and the defendant was placed on probation for a period of three years upon certain terms and conditions. Later, on June 24, 1960, the period of probation was extended for an additional year. On December 14, 1961, at the time judgment was pronounced in the case described in the preceding paragraph of this opinion, the defendant was found to be in violation of the terms and conditions of probation in the earlier case, such probation was revoked, and it was adjudged that he be punished by imprisonment in the state prison. He has appealed from the order revoking probation and from the judgment in that case (2d Criminal No. 8258).[1]

Each of the offenses which were alleged to have been committed during the month of March 1961 involved the use of a counter check for the purpose of obtaining cash from an em-

---

[1]The order revoking probation is not appealable and the attempted appeal therefrom must be dismissed. (See Pen. Code, § 1237; *People* v. *Robinson*, 43 Cal.2d 143, 145 [271 P.2d 872].)

ployee of the Ambassador Hotel in Los Angeles. The form of such instrument is set forth in the footnote.[2]

With respect to the first count of the information, an assistant night auditor of the hotel identified a counter check bearing his initial. In the spaces for the name of the bank, the branch, and the city and state were respectively inserted "Citizens National Bank," "Sunset & Vermont," and "L. A. Calif." The check was dated March 3, 1961, was for the sum of $45, and contained what appeared to be the signature of B. G. Eisenberg and a telephone number, "WE 11031." At the time the check was received by the witness, a credit card was also presented to him and from the contents of the face thereof he made a note on the check as follows: "Bruce G. Eisenberg" and "Schine # A 12261." He gave to the individual who presented the check $45 in cash in exchange for it. The witness testified as to a similar transaction with respect to another counter check of substantially the same content except that it was dated March 4, 1961, and was for the amount of $50. The same name and credit card reference, together with the witness' initial, were written on the check by the witness at the time it was presented to him. Apart from his notations on each check, the witness had no present recollection of either transaction and could not identify the person from whom he received either check.

Each of the three other checks involved in the respective offenses charged was substantially the same in content as the first two checks, heretofore described, except for the mat-

---

[2]"COUNTER CHECK

To_____Check No._____
          Name of Bank
_____Date_____19_____
          Branch

          City and State

PAY TO THE
    ORDER OF_____ $_____

_____Dollars

_____  I hereby represent that the amount
          Address                  drawn for on this Check is on de-
_____  posit to my credit in the bank named
  City      State      Phone       hereon, free of any claims, and is
                                   hereby assigned to Payee. I guar-
                                   antee payment with exchange and
                                   costs in collecting.

                                   Signed_____"

ters of date and amount and the notations placed thereon by the particular employee of the hotel who cashed the check. Such employees gave testimony as to transactions of the nature of those related by the first witness. Each made a notation as to the same credit card on the check or checks cashed by the witness but had no present recollection of any specific transaction and could not identify the defendant as the person who presented a check.

An operations officer of the Citizens National Bank testified that that bank had no branch located at Sunset and Vermont and there was no other bank there. The branch of the Citizens National Bank nearest to that location was at Sunset and Edgemont. He checked the records at that branch for the period commencing with the year 1929; there was no commercial checking account under the name of B. G. Eisenberg and no person of that name had any arrangement for credit. He found no record there relating to any person named Eisenberg. Three of the checks involved in the case were transmitted to the Sunset and Edgemont Branch and were not honored. The witness dialed the telephone number which was on the face of the checks and found it to be the number of a telephone answering service.

An examiner of questioned documents employed by the Los Angeles Police Department testified that he had compared the handwriting on the five checks with exemplars of the defendant's handwriting. In his opinion, the writing on the documents was done by the same person.[3] The same opinion was expressed by an examiner of questioned documents employed by the district attorney who was called as a witness by the prosecution.

The defendant testified in his own behalf. He said that at one time he had a Schine credit card which, he believed, bore the number A-12261. But in February 1961 it was taken

---

[3]The witness testified as follows: ''As a result of my examination of the pen and ink writing that appears on the faces of the checks 1 through 5—to be more specific, that pen and ink writing that pertains only to the making out of the checks, the name of the bank, the branch, the city and state, the date, the word 'Cash,' the number amount, the written amount, and an address, and the maker's name in each instance, 1 through 5, with the pen and ink writing that appears on the numerous check portions of Exhibit 6, and that pen and ink writing that will be akin to that that I have described on Exhibits 1, 2, 3, 4, 5, and the writing of the name 'Bruce Gerald Eisenberg' as it appears on the California driver's license, portion of Exhibit 6, it is my specific and unqualified opinion that these writings were made by one and the same person.''

from him when he attempted to rent an automobile. He further testified that he did not write the five checks which were cashed at the Ambassador Hotel.

The defendant contends that the instruments constituted promissory notes rather than checks and, therefore, their use did not result in the violation of the provisions of section 476a of the Penal Code.[4]  The defendant apparently bases his contention on the printed language on each counter check placed immediately above the line for the signature of the person making use of the form. (See footnote 2 of this opinion.) But such language did not make the nature of the instrument something other than that of a check. Each instrument was clearly an order on the named bank for the payment of money and was an instrument described in section 476a of the Penal Code. (See *People* v. *McNear*, 190 Cal.App.2d 541, 546 [12 Cal.Rptr. 124].) The point is untenable.

The defendant attacks the credibility of the expert witnesses. One of his claims is that the second expert did not testify truthfully when he stated that his only examination of the checks and exemplars prior to his testimony had been made when he came to the courtroom in the afternoon in response to a telephone call he had received from the deputy district attorney about noontime. The defendant bases his argument upon the fact that in the course of the first expert's testimony that witness identified marks on the checks as being the initials of the second expert. But such argument lacks substance because both experts testified in an afternoon session of the trial and, hence, it is a reasonable inference that the second witness had made his examination before the court had reconvened after the noon recess and, accordingly, before the first witness testified.  Other arguments of the defendant as to the weight which should have been given to the opinions of the handwriting experts are governed by

[4]Section 476a of the Penal Code is in part as follows: '' (a) Any person who . . . wilfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, . . . for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer . . . has not sufficient funds in, or credit with said bank or depositary .·. . for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment . . .

'' (d) The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary . . . for the payment of such check, draft or order.''

the settled rule which is expressed in *People* v. *Tucker,* 88 Cal.App.2d 333 [198 P.2d 941], at page 340, as follows: "The law makes no distinction in weighing evidence between expert testimony and evidence of other character. [Citations.] ▪ It is for the jury and not the reviewing court to determine the weight to be given such evidence. [Citations.]" (See also *People* v. *Jeffery,* 181 Cal.App.2d 673, 676 [5 Cal.Rptr. 449].)

▪ The defendant claims that certain statements made by the deputy district attorney in his opening argument to the jury constituted prejudicial misconduct. This court has carefully examined the record in the light of such contention. No objection to such statements was made in the trial court by the defendant's counsel. Misconduct was not claimed and the trial court was not requested to instruct the jury to disregard any part of the argument. Generally, under such circumstances the claim of misconduct will not be considered on appeal. (*People* v. *Wein,* 50 Cal.2d 383, 396 [326 P.2d 457]; *People* v. *McNear, supra,* 190 Cal.App.2d 541, 547.)

▪ Even if it be assumed that any impropriety existed with respect to any of the statements now challenged by the defendant, the wrong was not so flagrant that it could not have been cured by a prompt admonition to the jury. Moreover, under the facts of this case, it does not appear that any different verdict would have been probable had the deputy district attorney omitted any or all of those portions of his argument. Consequently, there is no ground for a reversal of the judgment. (*People* v. *Lyons,* 50 Cal.2d 245, 265 [324 P.2d 556].)

▪ The trial court gave an instruction on the subject of the credibility of witnesses, the first sentence of which was: "You are the sole and exclusive judges of the credibility of the witnesses who have testified in the case." Error is asserted because the trial court modified the instruction by deleting the second sentence thereof which was as follows: "The term 'witness' includes every person whose testimony under oath has been received as evidence, whether by examination here in court or through desposition." Since no evidence was offered by way of deposition there was no error.

On the day when the case was submitted to it, the jury began its deliberations at approximately 11:20 a.m. At about 2:05 p.m. the court, in the absence of the jury, discussed with counsel the fact that as to each of the five counts the jurors had been given a separate form to be used for a verdict of

guilty but had been given only one form for a verdict of not guilty. The defendant thereupon made a motion for a mistrial which was denied. At 2:07 p.m. the jury was brought into court. Upon inquiry by the trial judge the foreman stated that no verdict had been reached as to any count. The court then instructed the jury as follows: "Ladies and gentlemen of the jury, each count set forth in the Information charges a separate and distinct offense. You must consider the evidence applicable to each alleged offense as though it were the only accusation before you for consideration, and you must state your finding as to each count on a separate verdict, uninfluenced by the mere fact that your verdict as to any other count or counts is in favor of or against the defendant. The defendant may be convicted or acquitted upon any or all of the offenses charged, depending upon the evidence and the weight you give to it under the Court's instructions. It has been brought to my attention that you do not have a separate verdict as to each count, and I am instructing the Clerk to furnish you with a form of a verdict of guilty and a form of a verdict of not guilty for each of the five counts, and you will consider each count separately and render a verdict accordingly as to each count. You will continue your deliberations." At 2:09 p.m. the jury left the courtroom to resume its deliberations and, at 4:15 p.m., returned to the courtroom with verdicts of guilty as to all counts.

There is no basis for an assumption that the jury was in any way precluded from fairly considering the question as to whether it should find the defendant not guilty as to any count by reason of the failure of the court to give the jury a complete set of forms of verdict when it first retired for the purpose of beginning its deliberations. The defendant has not shown that he suffered any prejudice by reason of the court's inadvertence and, consequently, there was no error warranting a reversal of the judgment. (See *People* v. *Sambrano,* 33 Cal.App.2d 200, 217-218 [91 P.2d 221].)

The defendant asserts in his opening brief that after the verdicts had been returned and the court had adjourned, one juror made the following statement to him and his attorney: " 'The vote was 10 to 2 for conviction and they told me if I didn't change my vote, the only thing that would happen would be that we would be locked up for the week-end and Monday if we still couldn't agree, the Court would declare a guilty verdict anyway due to the major-

ity.' '' Such an assertion in a brief does not constitute part of the record on appeal and such a reference to matter outside the record cannot be considered. (*People* v. *Croft*, 134 Cal.App.2d 800, 804 [286 P.2d 479].) But even if an affidavit of the juror embodying her statement had been submitted to the trial court in support of the defendant's motion for a new trial, it would have been of no avail because of the settled rule that an affidavit of that nature cannot be used to impeach a verdict. (*Kollert* v. *Cundiff*, 50 Cal.2d 768, 772 [329 P.2d 897]; *People* v. *Sutic*, 41 Cal.2d 483, 494-495 [261 P.2d 241]; *People* v. *Zelver*, 135 Cal.App.2d 226, 235-236 [287 P.2d 183].)

The conviction of the defendant of the offenses alleged to have been committed in March 1961 justified the revocation of the probation granted to him in the earlier case (2d Criminal No. 8258) and the imposition of sentence for each of the offenses charged in that case as to which he had pleaded guilty. (*People* v. *Robinson, supra*, 43 Cal.2d 143, 146; *People* v. *Ashley*, 166 Cal.App.2d 249, 254-255 [332 P.2d 758].)

In the subsequent case relating to the offenses committed in March 1961 (2d Criminal No. 8137), the appeal from the order denying a new trial is dismissed (see Pen. Code, § 1237, as amended in 1961) and the judgment is affirmed.

In the case in which probation was revoked and sentence thereupon imposed (2d Criminal No. 8258), the appeal from the order revoking probation is dismissed and the judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1963.